2023195
FILED
IN THE OFFICE OF THE
CLERK OF SUPREME COURT
05-02-2024
STATE OF NORTH DAKOTA

# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

---

## 2024 ND 88

---

SPOTTIE, INC., a Nevada corporation,                    Plaintiff and Appellant

v.

BAIUL-FARINA, LTD., a Nevada corporation,

CARLO J. FARINA CO. LTD., a Nevada corporation;

UKRALIA, LLC, a Nevada limited liability company,

Defendants and Appellees

---

## No. 20230195

---

Appeal from the District Court of McKenzie County, Northwest Judicial District, the Honorable Daniel S. El-Dweek, Judge.

AFFIRMED IN PART AND REVERSED IN PART, AND REMANDED.

Opinion of the Court by Crothers, Justice.

William E. Sparks (argued), The Woodlands, TX, and Joshua A. Swanson (appeared), Fargo, ND, for plaintiff and appellant.

Bryan L. Van Grinsven (argued), Englewood, CO, and Bryan L. Van Grinsven (appeared), Minot, ND, for defendants and appellees.

## SPOTTIE v. BAIUL-FARINA, et al.
## No. 20230195

**Crothers, Justice.**

[¶1]   Spottie, Inc. appeals from a judgment entered in favor of the Farina defendants. We affirm in part concluding the district court did not err when it quieted title to disputed oil and gas interests in favor of the Farina defendants and awarded them attorney fees. We reverse in part concluding the court erred when it ordered Spottie to pay non-legal costs. We remand the case for the court to recalculate its cost award without non-legal costs and to consider the Farina defendants' request for additional attorney fees and legal costs.

I

[¶2]   Spottie and its sole shareholder, the PJM Living Trust, sued the Farina defendants in 2021. Their complaint alleged the Farina defendants improperly claimed title to oil and gas interests once owned by Edward Davis, who formed Spottie and used it as a holding company. The complaint alleged Spottie owned the disputed interests and Farina's assertions of ownership were fraudulent. The Farina defendants moved to dismiss the complaint. The district court granted the motion in part. The court ruled PJM lacked standing and dismissed it from the case. The court also dismissed various claims brought by Spottie, except for a quiet title claim and a claim for unjust enrichment.

[¶3]   The Farina defendants filed an answer and counterclaim. They alleged Farina entered into an oil and gas interest acquisition venture with Davis and advanced him cash. They claimed the deal failed and resulted in a settlement agreement in which Davis promised to convey oil and gas interests to Farina. They alleged Davis and Spottie conveyed the disputed interests to Baiul-Farina, Ltd. via an assignment made in 2016. The Farina defendants claimed Davis, who died that same year, agreed to record the assignment but failed to do so. They pleaded claims for breach of contract, quiet title, conversion, unjust enrichment, and slander of title. Spottie answered by pleading a number of affirmative defenses, including laches.

1

[¶4] The district court held a three-day bench trial. Various witnesses testified including Carlo Farina, representatives of Spottie, employees from the McKenzie County recorder's office, a notary whose name appears on documents at issue, and handwriting experts called by each side. Spottie offered Exhibit 12, a document it claimed was a copy of a forged assignment conveying the disputed interests to Farina. Spottie also offered Exhibit 13, which was a version of the assignment that Farina admitted to altering and recording in McKenzie County. The court received both exhibits. Farina testified he learned Davis had not recorded the original assignment while preparing to change the name of one of the Farina entities. Farina testified he mailed the original assignment to the recorder's office but it was rejected. He testified he then altered an attachment to the assignment, which specified the interests subject to the conveyance, to comply with the recorder's margin and typeface requirements.

[¶5] The district court entered an order in favor of the Farina defendants. The court held the assignment from Davis and Spottie to Baiul-Farina, Ltd. was valid. The court found Farina made scrivener's errors when altering the assignment, and the errors were detrimental to the Farina defendants' interests. The court stated it "deems reformation to be the proper cure." The court determined Spottie erroneously received $419,821.24 in revenue from the disputed interests and awarded the Farina defendants damages in that amount. The court also held its judgment "is binding upon" PJM because it found "obvious privity" between Spottie and PJM. The court also decided the Farina defendants were entitled to attorney fees and costs based on a provision in the assignment. The Farina defendants subsequently filed a statement of costs with exhibits.

[¶6] Spottie appealed before the district court entered judgment and while the court was considering the Farina defendants' statement of fees and costs. We temporarily remanded the case, and the district court entered judgment. The judgment states the "Farina Assignment is valid and enforceable subject to reformation," and in addition to the damages the court awarded the Farina defendants $343,970.16 in attorney fees and $50,405.56 in costs. Spottie filed a second notice of appeal and a supplemental appellate brief.

## II

[¶7]   Spottie argues the district court's ownership determination is erroneous; the court erred when it rejected Spottie's laches defense; the court improperly bound PJM to the judgment; and the court's award of attorney fees and costs is inappropriate. Our standard of review for appeals taken after a bench trial is well established:

> "In an appeal from a bench trial, the district court's findings of fact are reviewed under the clearly erroneous standard of review, and its conclusions of law are fully reviewable. A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if there is no evidence to support it, or if, after reviewing all of the evidence, this Court is convinced a mistake has been made. In a bench trial, the district court is the determiner of credibility issues and we will not second-guess the district court on its credibility determinations. Findings of the trial court are presumptively correct."

*Great Plains Royalty Corp. v. Earl Schwartz Co.*, 2021 ND 62, ¶ 10, 958 N.W.2d 128 (quoting *McCarvel v. Perhus*, 2020 ND 267, ¶ 9, 952 N.W.2d 86).

## III

[¶8]   As a threshold matter, Spottie takes general issue with the district court's post-trial order. Spottie asserts, and we agree, the district court adopted the Farina defendants' proposed order nearly, if not entirely, verbatim. Spottie argues that, "[i]n doing so, the District Court erroneously assumed all factual and legal conclusions in favor of Farina despite the overwhelming evidence to the contrary." Under N.D.R.Ct. 7.1, the district court may assign preparation of proposed findings of fact and conclusions of law to counsel. We have repeatedly expressed disapproval of courts adopting proposed findings and conclusions wholesale. *See, e.g., Kershaw v. Finnson*, 2022 ND 165, ¶ 18, 980 N.W.2d 40; *Estate of Albrecht*, 2020 ND 27, ¶ 9, 938 N.W.2d 151; *Dale Expl., LLC v. Hiepler*, 2018 ND 271, ¶ 8, 920 N.W.2d 750; *In re M.B.*, 2006 ND 19, ¶ 11, 709 N.W.2d 11. Although we disapprove of the practice, we will not reverse a district court's decision on the sole basis that it adopted proposed

findings of fact and conclusions of law. *Guardianship of P.T.*, 2014 ND 223, ¶ 8, 857 N.W.2d 367.

## IV

[¶9] Spottie argues the district court erred when it quieted title of the disputed interests in favor of the Farina defendants. Spottie asserts the court improperly relied on the assignment, the court ignored evidence of forgery, and the settlement agreement was breached or modified without consideration.

## A

[¶10] Spottie argues the district court admitted the assignment at trial for purposes other than establishing ownership. Spottie asserts the court's quiet title order, which quiets title based on the assignment, is inconsistent with its evidentiary rulings and therefore the court's ownership determination is erroneous. In Spottie's words: "Because the District Court did not admit the Assignment for purposes of showing ownership, Farina is unable to establish ownership in the Assets."

[¶11] "A district court has broad discretion in admitting or excluding evidence at trial." *State v. Thomas*, 2022 ND 126, ¶ 10, 975 N.W.2d 562. Under N.D.R.Ev. 105, when evidence is admissible for one purpose but not another, the district court "must restrict the evidence to its proper scope and instruct the jury accordingly." Rule 105 applies to bench trials. *Black Elk v. State*, 2023 ND 150, ¶ 13, 994 N.W.2d 394. "[T]he judge cannot use evidence admitted for one purpose for the purpose of finding facts as to which the evidence is inadmissible." *Id.* (quoting 21A Charles Alan Wright & Kenneth W. Graham, Jr., *Federal Practice and Procedure: Evidence* § 5063.1 (2d ed. April 2023 Update)). Our abuse of discretion standard applies to evidentiary rulings:

> "A district court has broad discretion on evidentiary matters, and we will not overturn its admission or exclusion of evidence on appeal unless that discretion has been abused. A district court abuses its discretion when it acts arbitrarily, capriciously, or unreasonably, or when its decision is not the product of a rational mental process or if it misinterprets or misapplies the law."

4

*State v. Salou*, 2024 ND 6, ¶ 7, 1 N.W.3d 602 (quoting *State v. Yousif*, 2022 ND 234, ¶ 5, 982 N.W.2d 870).

[¶12] At trial, citing N.D.R.Ev. 105, Spottie attempted to offer the unrecorded assignment for limited purposes, including that it was a forgery. Spottie's counsel stated, "we by no means admit to its authenticity." The court received the unrecorded assignment, Exhibit 12, noting Spottie's position:

> "THE COURT: Oh. Okay. So I understand. So you want 12 to be admitted, but you—you're not necessarily admitting it for its authenticity. You're not saying it's an authentic document. You have some argument about how Exhibit 12 should be used.
>
> [SPOTTIE'S COUNSEL,] MR. BELL: That is correct, Your Honor.
>
> . . .
>
> THE COURT: Yeah. 12 is received, and, you know, obviously like I said, I'm the fact finder ultimately, and both counsel are going to have an opportunity to argue what I should decide Exhibit 12 and any other exhibit should mean in this trial. So to the extent that that is, is if you think—and I will note your objection that you're not—you're not admitting it for being an authentic document. You are admitting it for other purposes. And so there should be no inference, and there is no inference taken that you are conceding this as authentic.
>
> MR. BELL: Thank you, Your Honor. I think moving forward, and I—we have no problem with the ruling, but when Defendants are attempting to use Exhibit 12 and other forms of Exhibit 12, the [onus] is still on them to lay the necessary foundation that it is and as well is that [verbatim] it's authentic. I don't believe that burden is alleviated by us requesting the Court to have this admitted, but on a limited scope.
>
> THE COURT: Yeah. You have your purposes for why it's going to be admitted, they're going to have their purposes for why they want it admitted, and it's up to both of you to build your case one way or the other on it. And how this ultimately comes out in a finding of fact [verbatim]. So does that make sense?"

Later, the Farina defendants offered email correspondence that included an attachment with an assignment identical to what Spottie offered as Exhibit 12. Spottie objected, and after some discussion, the court ruled the email attachment "will be at least admitted for the purposes of showing that it was the attachment and that it was received by the recipients in the e-mail. For that limited purposes and for any other purpose that you end up showing."

[¶13] Throughout trial various witnesses testified as to the genuineness of the assignment, including handwriting experts for both sides. After the trial concluded, the district court entered an order stating Exhibit 12 was "received into evidence with the Court recognizing Spottie's authenticity objection based on allegations they are fraudulent." The court noted it "made no inference as to their authenticity and allowed the parties to present their cases with respect thereto." The court ultimately held the assignment was "valid," and the court's ownership determination was based on that finding. After we temporarily remanded the case for consideration of fees and costs, Spottie raised the argument it now advances on appeal—that the court admitted the assignment for limited purposes. The court rejected Spottie's argument, reiterated its earlier ruling, and again held: "The Court properly relied on the Assignments, which were admitted into evidence, in awarding attorney's fees."

[¶14] Spottie argues the district court "violated its own trial orders by considering the Assignment for any and all purposes," and therefore the court erred when it relied on the assignment to determine ownership of the disputed interests. However, even if the court's final order was inconsistent with its earlier rulings, that fact would not be grounds for reversal. District courts retain authority to revisit interlocutory orders until entry of final judgment. *See* N.D.R.Civ.P. 54(b) (stating any order or decision "may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities"); *see also Kartes v. Kartes*, 2013 ND 106, ¶ 22, 831 N.W.2d 731 ("interlocutory rulings by a trial court are by definition not final, and remain subject to review and modification"); *Nesvig v. Nesvig*, 2006 ND 66, ¶ 31, 712 N.W.2d 299 ("Indeed even if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous in limine ruling.").

[¶15] We have reviewed the trial transcript and are not convinced the district court made a definitive ruling during trial concerning N.D.R.Ev. 105 as Spottie suggests. We found no instance where the court expressly ruled the unrecorded assignment was inadmissible for the purpose of establishing ownership of the disputed interests. The validity of the assignment was placed in dispute when Spottie offered it into evidence and asserted it was a forgery. Once admitted, the assignment's authenticity was a question of fact to be decided based on the evidence presented at trial. *See* N.D.R.Ev. 104(b) (providing that when the relevance of evidence depends on proof of a fact, the court may admit the proposed evidence on the condition the proof be introduced later); *see also State v. Noorlun*, 2005 ND 189, ¶ 15, 705 N.W.2d 819 (discussing authentication of documentary evidence and noting, once admitted, the "question of its weight" is one for the jury). We conclude the district court did not abuse its discretion when it admitted and considered Exhibit 12 while making its ownership determination.

B

[¶16] Spottie argues the district court's finding that the unrecorded assignment was not a forgery is clearly erroneous. Spottie asserts the district court ignored certain evidence. Spottie claims Davis's signature on the assignment is inconsistent with other documents he signed because they are not in blue ink and do not contain his initials on each page. Spottie also asserts Farina took ownership of Davis's telephone number after Davis died. Spottie claims this shows Farina fraudulently tried to collect oil and gas revenue by posing as Davis. In addition, Spottie cites testimony provided by its handwriting expert indicating Davis's signature on the assignment is not genuine.

[¶17] The Farina defendants provided their own handwriting expert. Farina testified he obtained Davis's phone number for business purposes because it uniquely ends in the numbers "5678." Farina asserts the assignment is a photocopy so the color of the signature ink is unclear. Farina notes Davis's signature on the assignment is notarized and the notary testified he never notarized a document without personally observing Davis sign it.

7

[¶18] Each side presented evidence favorable to its case. When conflicting evidence is presented at a bench trial, we give deference to the district court's findings. *In re Conservatorship of T.K.*, 2009 ND 195, ¶ 13, 775 N.W.2d 496. After reviewing the voluminous record in this case, we are not left with a definite and firm conviction the district court made a mistake. We conclude the court's finding that the unrecorded assignment is not a forgery is not clearly erroneous.

C

[¶19] Spottie argues that even if the district court properly admitted the assignment and it is not a forgery, the court's ownership determination is erroneous because Davis signed the settlement agreement giving rise to the assignment in his individual capacity. Spottie asserts Davis personally lacked authority to bind Spottie to the settlement. Even if Davis had authority, Spottie asserts the interests purportedly conveyed in the assignment are greater than those contemplated by the settlement. Spottie argues these additional interests constitute a modification of the settlement and, "[b]ecause there is no additional consideration to support the modification, the Assignment is not valid and, thus, not binding on Spottie."

[¶20] Mineral interests and production royalty interests constitute real property. *Kittleson v. Grynberg Petroleum Co.*, 2016 ND 44, ¶ 34, 876 N.W.2d 443; *see also Rasnic v. ConocoPhillips Co.*, 2014 ND 181, ¶ 10, 854 N.W.2d 659. An instrument granting real property supersedes earlier executory contracts concerning the transaction. *Four Season's Healthcare Ctr., Inc. v. Linderkamp*, 2013 ND 159, ¶ 12, 837 N.W.2d 147. Under the doctrine of merger, the provisions of an executory contract merge into the conveying instrument. *Id.* Absent fraud or mistake, the conveying instrument alone governs determination of the rights of the parties to the transaction. *Id.*

[¶21] The district court found the assignment in this case was genuine and not a forgery, and as explained in Part IV-B, the court's finding is not clearly erroneous. The assignment superseded the earlier settlement agreement. Unlike the settlement agreement, Davis executed the assignment in his capacity as the president of Spottie. Regardless of Davis's purported lack of

8

authority to enter into the settlement agreement, or whether the terms of the settlement were breached or modified, the assignment was effective on delivery. *See Northern Oil & Gas, Inc. v. EOG Res., Inc.*, 2022 ND 182, ¶ 9, 981 N.W.2d 314 (a grant takes effect and vests title upon delivery). Spottie's assertions regarding the settlement agreement fail as a matter of law because the ownership dispute is governed by the terms of the assignment.

D

[¶22] Spottie argues the recorded assignment was altered and is therefore void. Spottie also asserts the Farina defendants failed to present and no longer possess the original assignment. Absent the original assignment or a valid recording, Spottie asserts the Farina defendants cannot establish ownership of the disputed interests. We disagree. Recordation of a granting instrument is not necessary to effect a conveyance. *See* N.D.C.C. § 47-19-46 (stating an unrecorded instrument is valid "as between the parties thereto"). Nor is it necessary for a plaintiff to present the original conveying instrument to prevail in a quiet title action. In a quiet title action ownership may be established through evidence that a conveying instrument was delivered but subsequently lost. *See Swanson v. Swanson*, 2011 ND 74, ¶ 18, 796 N.W.2d 614 (stating "our case law allows for an action to establish title to real estate by virtue of a lost deed" and collecting cases); *see also Nelson v. Christianson*, 343 N.W.2d 375, 377 (N.D. 1984) (discussing the burden of proof for establishing title by lost deed); *Shockman v. Ruthruff*, 149 N.W. 680, 687 (N.D. 1914) (stating "the lost deed, when established, is, of course, as sufficient to transfer title as though the deed, whose once existence is decreed, never had been lost"). Spottie's assertion that the Farina defendants could not establish ownership absent the original assignment or a valid recording fails as a matter of law.

V

[¶23] Spottie claims the district court erred when it found laches does not apply. Spottie asserts the Farina defendants "unreasonably and inexcusably" waited years to enforce their rights resulting in "great cost and prejudice to Spottie" and giving rise to a valid defense of laches.

[¶24] The equitable defense of laches may be available when a party delays enforcing his rights and a change in conditions during the delay results in prejudice to an adverse party. *Matter of Rose Henderson Peterson Mineral Trust dated March 26, 1987*, 2022 ND 92, ¶ 28, 974 N.W.2d 372.

> "Laches is a delay or lapse of time in commencing an action that works a disadvantage or prejudice to the adverse party because of a change in conditions during the delay. Laches does not arise from a delay or lapse of time alone, but is a delay in enforcing one's rights which works a disadvantage to another. The party against whom laches is sought to be invoked must be actually or presumptively aware of his rights and must fail to assert them against a party who in good faith permitted his position to become so changed that he could not be restored to his former state. The party invoking laches has the burden of proving he was prejudiced because his position has become so changed during the delay that he cannot be restored to the status quo."

*Id.* (quoting *Twin City Tech. LLC v. Williams Cty.*, 2019 ND 128, ¶ 16, 927 N.W.2d 467). "Whether laches bars a claim is a fact intensive inquiry and depends on the facts and circumstances of the case." *Kvande v. Thorson*, 2020 ND 186, ¶ 12, 947 N.W.2d 901. "Cases involving laches must stand or fall on their own facts and circumstances." *Siana Oil & Gas Co., L.L.C. v. Dublin Co.*, 2018 ND 164, ¶ 24, 915 N.W.2d 134.

[¶25] The terms of the assignment required Spottie to record it within sixty days of the conveyance. The parties agree Spottie did not record the assignment. The district court found the Farina defendants were not aware the assignment had not been recorded and, when they discovered it was not, they "acted promptly." Farina testified he became aware of issues concerning the disputed interests in 2020 while attempting to change the name of a business. Based on our review of the record, the court's findings are not clearly erroneous, and we are not left with a definite and firm conviction the court made a mistake when it found laches does not apply.

10

# VI

[¶26] Spottie argues the district court erred when it held the judgment is binding on PJM despite having earlier dismissed PJM from the case. Spottie asserts the court improperly applied principles of res judicata and privity.

[¶27] Spottie's attempt to assert the rights of a non-party implicate our subject-matter jurisdiction, which is an issue we have a duty to address even if the parties do not raise it. *See Kaspari v. Kaspari*, 2023 ND 207, ¶ 4, 997 N.W.2d 621. Standing is a concept that ensures "a party is sufficiently affected so as to insure that a justiciable controversy is presented to the court." *Whitecalfe v. N.D. Dep't of Transp.*, 2007 ND 32, ¶ 15, 727 N.W.2d 779 (cleaned up). "A party is entitled to have a court decide the merits of a dispute only after demonstrating standing to litigate the issues placed before the court." *Bell v. Pro Tune Plus*, 2013 ND 147, ¶ 5, 835 N.W.2d 858 (quoting *Triple Quest, Inc. v. Cleveland Gear Co., Inc.*, 2001 ND 101, ¶ 13, 627 N.W.2d 379). To appeal a district court's order, a party must be aggrieved by the order or have a legal interest that may be enlarged or diminished by the order. *Bell Pro Tune Plus*, at ¶ 5. "To have standing to litigate an issue a party must have suffered some injury from the putatively illegal action and the party must assert his own legal rights and interests and cannot rest his claim on the legal rights and interests of third parties." *McColl Farms, LLC v. Pflaum*, 2013 ND 169, ¶ 10, 837 N.W.2d 359; *see also Albrecht v. Albrecht*, 2020 ND 105, ¶ 10, 942 N.W.2d 875. Whether a party has standing to litigate an issue is a legal question. *Albrecht*, at ¶ 10.

[¶28] PJM and Spottie are separate and distinct entities. PJM was a plaintiff in this lawsuit before the district court dismissed it for lack of standing. PJM has not filed a notice of appeal. Spottie's notice of appeal admits PJM is "a non-party to this case," but nonetheless appears to assert a claim on appeal for PJM. Spottie has not identified any authority for the proposition that it can advance the claims and interests of a third-party no longer involved in this litigation. Because Spottie lacks standing to assert PJM's rights and defend its interests, we will not address the propriety of the district court's privity determination concerning PJM.

## VII

[¶29] Spottie argues the district court erred when it awarded the Farina defendants attorney fees and costs. Spottie contends an award of fees and costs was impermissible because the provision supporting the court's award is in the assignment, which Spottie claims was either improperly considered by the court or invalid. We reject these arguments concerning the assignment for the reasons set forth in Part IV of this opinion. In the alternative, Spottie argues the court's award of fees and costs was an abuse of discretion. Spottie claims the amount of attorney fees the court awarded is unreasonable and various costs were not recoverable.

[¶30] North Dakota follows the "American Rule," which requires each party to bear its own attorney fees unless recovery of fees is authorized by contract or statute. *Deacon's Dev., LLP v. Lamb*, 2006 ND 172, ¶ 11, 719 N.W.2d 379. Under N.D.C.C. § 28-26-01, unless a claim is frivolous, "the amount of fees of attorneys in civil actions must be left to the agreement, express or implied, of the parties." *See also* N.D.R.Civ.P. 54(e) (providing rules for attorney fees, costs, and disbursements). When addressing whether an award of attorney fees is reasonable, the "lodestar amount" is presumed to be a reasonable amount. *Big Pines, LLC v. Baker*, 2021 ND 70, ¶ 18, 958 N.W.2d 480. The lodestar amount is "the number of reasonably expended hours times a reasonable hourly rate." *Id.* (quoting *Thompson v. Schmitz*, 2011 ND 70, ¶ 18, 795 N.W.2d 913). The lodestar amount does not necessarily end the inquiry; reasonableness may vary depending on the circumstances. *Palmer v. Gentek Bldg. Prod., Inc.*, 2019 ND 306, ¶ 24, 936 N.W.2d 552. When determining reasonableness, the district court may consider factors set out by N.D.R. Prof. Cond. 1.5(a), which are:

> "(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
>
> (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

12

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent."

[¶31] "A district court is considered an expert in determining the amount of attorney fees, and its decision concerning the amount and reasonableness of the attorney's fees will not be overturned on appeal absent a clear abuse of discretion." *Twin City Tech. LLC v. Williams Cty.*, 2022 ND 63, ¶ 32, 971 N.W.2d 822 (cleaned up) (quoting *Riemers v. State*, 2008 ND 101, ¶ 8, 750 N.W.2d 407). "A district court abuses its discretion if it acts in an arbitrary, unreasonable, or unconscionable manner, it misinterprets or misapplies the law, or its decision is not the product of a rational mental process." *Indus. Comm'n of N.D. v. Gould*, 2024 ND 32, ¶ 16, 3 N.W.3d 151 (cleaned up) (quoting *Schmitz v. N.D. State Bd. of Chiropractic Exam'rs*, 2022 ND 52, ¶ 16, 971 N.W.2d 892).

[¶32] The district court awarded fees and costs based on a provision in the assignment requiring Spottie to provide reimbursement upon request for revenues derived from the disputed interests. In the event Spottie fails to do so, the assignment provides "the right to initiate legal action to enforce collection of unpaid principal and interest as well as receive reimbursement of attorney's fees and legal costs." Based on this provision, the district court awarded $343,970.16 in "contractual attorney's fees" and $50,405.56 in "contractual costs."

[¶33] Spottie argues the award of attorney fees is unreasonable because some amounts are for work not specific to this action, some amounts are for services provided by attorneys who did not appear in the case, and other amounts are for services related to an oil and gas producer's bankruptcy. The Farina defendants contend the fees related to the bankruptcy case were incurred because Spottie claimed the producer owed it revenue from the disputed interests, which required Spottie to submit filings in the bankruptcy court to put the court on notice of these proceedings. We note the district court deducted amounts from the Farina defendants' statement of fees and costs for fees related to litigation concerning interests in Colorado. We do not read the assignment to require an attorney to file a notice of appearance in a specific case as a prerequisite for a recovery of fees. This litigation included various pre-trial motions and proceeded to a three-day trial. Under these circumstances, the district court's award of attorney fees is not a clear abuse of discretion.

[¶34] Spottie also contends the district court erred when it awarded costs. Spottie argues the court erred when it awarded costs for items not authorized by N.D.C.C. § 28-26-06, which permits specified costs to be taxed as part of the judgment in favor of a prevailing party. However, the authority for the award of costs in this case was the assignment, which allows for recovery of "legal costs." *Cf. Heng v. Rotech Medical Corp.*, 2006 ND 176, ¶ 35, 720 N.W.2d 54 (declining to address whether mediation fees are permissible costs under ch. 28-26 because "the parties contractually agreed to share mediation expenses"); *see also Intercontinental Grp. P'shp v. KB Home Lone Star L.P.*, 295 S.W.3d 650, 653 (Tex. 2009) ("Parties are free to contract for a fee-recovery standard either looser or stricter than [statutory standards.]").

[¶35] Spottie notes a portion of the amount of costs was for expenses related to airfare, ground transportation, hotel accommodations, and meals. Spottie argues the district court abused its discretion when it included these items in its cost award. We agree. The assignment allows for recovery of "legal costs." Transportation and accommodation costs are not expenses that are legal in nature. The district court misinterpreted the assignment and thus abused its discretion when it included amounts for non-legal expenses in its award of

14

costs. We reverse the cost award and remand for calculation of "legal costs" only.

[¶36] The Farina defendants seek an award of attorney fees and legal costs under the assignment for expenses accrued since they were last calculated by the district court. We instruct the district court to consider their request on remand. *See LAWC Holdings, LLC v. Vincent Watford, L.L.C.*, 2024 ND 16, ¶ 22, 2 N.W.3d 672 (providing that although we have jurisdiction to award attorney fees on appeal, we prefer the initial determination be made by the district court).

## VIII

[¶37] The portion of the judgment quieting title in the disputed interests and awarding attorney fees is affirmed. The portion of the judgment awarding costs for non-legal expenses is reversed. The case is remanded with instructions for the district court to recalculate its cost award without non-legal expenses, and to consider the Farina defendants' request for additional attorney fees and legal costs.

[¶38] Jon J. Jensen, C.J.
Daniel J. Crothers
Lisa Fair McEvers
Jerod E. Tufte
Douglas A. Bahr